UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| EARL RAY TROTTER | ) | |
|---|---|---|
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. 4:07-cv-38 |
| | ) | *Mattice* |
| | ) | |
| STEPHEN DOTSON, Warden, | ) | |
| | ) | |
| *Respondent*. | ) | |

# MEMORANDUM

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Earl Ray Trotter ("Trotter"). The matter is before the court on the respondent's answer to the petition and Trotter's reply. For the following reasons, the petition for the writ of habeas corpus will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

I.     Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that Trotter is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.    Factual Background

The respondent has provided the court with copies of the relevant documents as to Trotter's post-conviction proceedings; there was no direct appeal from the convictions. [Court File No. 12, Notice of Filing Documents, Addenda 1-7]. Trotter pleaded guilty, in the Circuit Court of Bedford County, Tennessee, to attempted second degree murder, especially aggravated burglary, and especially aggravated robbery, and received an effective sentence of 25 years. As noted, he did not file a direct appeal of his convictions or sentence, but did file a petition for post-conviction relief which was denied by the trial court after an evidentiary hearing and the Tennessee Court of Criminal Appeals affirmed. *Trotter v. State*,

No. M2005-02905-CCA-R3-PC, 2006 WL 2843350 (Tenn. Crim. App. Oct. 5, 2006) [Addendum 5], *perm. app. denied, id.* (Tenn. Jan. 29, 2007) [Addendum 7].

The Tennessee Court of Criminal Appeals summarized the factual basis for Trotter's guilty plea and the circumstances surrounding his plea and sentence as follows:

> The petitioner was indicted by the Bedford County Grand Jury for attempted second degree murder, especially aggravated burglary, and especially aggravated robbery. On January 20, 2005, the petitioner pled guilty to all charges with no agreement regarding sentencing. At the guilty plea hearing, the State recited the factual basis for the plea. The State contended that the petitioner and two co-defendants, Kenny Porter and Ellis Baucom, Jr., decided to rob an elderly gentleman, Claude Thomas, who lived alone in the country. The men believed that the victim had "guns and other things of value and a large sum of money that he kept in his house." Late in the evening of June 26, 2004, the men went to the victim's residence and knocked on his door. When the victim opened the door, the men went in and demanded money. The victim gave the men his wallet, in which was a large sum of money, but the men were not satisfied. Baucom held a gun on the victim while the petitioner searched the house. The victim was "pistol whipped" during the search. At some point, the victim managed to grab one of his guns. The petitioner fired two shots at the victim, striking him once in the face causing very serious injuries. Ultimately, the investigation focused on the petitioner and his co-defendants. The State concluded the recitation of facts by stating:
>
>> All three [perpetrators] were interviewed and they all implicated themselves and one another including this defendant having given a statement indicating that he did go in with the intent to rob Mr. Thomas. That he-when Mr. Thomas attempted to defend himself, that he did fire a shot that struck Mr. Thomas in the face. He did take some of the money at force from Mr. Thomas.
>
> The petitioner agreed with the State's recitation, explicitly admitting to the trial court his complicity in the crimes. At the conclusion of the guilty plea hearing, the trial court scheduled a sentencing hearing for March 21, 2005.
>
> On the date of the sentencing hearing, the petitioner agreed to accept a sentence of nine years each for attempted second degree murder and especially

> aggravated burglary conviction. The agreement provided that the petitioner was to serve thirty percent of these sentences in confinement before becoming eligible for release. Additionally, the petitioner agreed to accept a sentence of twenty-five years for the especially aggravated robbery conviction, one hundred percent of which he was to serve in confinement. All three sentences were to be served concurrently with each other but consecutively to an outstanding sentence in Sumner County. The trial court accepted the agreement.

*Id.*, 2006 WL 2843350 at *1.

In his petition for post-conviction relief, Trotter alleged, *inter alia*, that he was denied the effective assistance of counsel. All issues other than the claims of ineffective assistance of counsel were abandoned on appeal from the denial of post-conviction relief. *Id.* at *2, n.1.

In support of his petition for the writ of habeas corpus, Trotter alleges four instances of ineffective assistance of counsel: (1) his attorney failed to contact Trotter's alibi witnesses and thus Trotter was coerced into pleading guilty; (2) his attorney failed to object to the introduction of inflammatory testimony from witnesses in the statements the State planned to use at trial; (3) his attorney failed to inform him of any plea negotiation offers proffered by the State; and (4) his attorney failed to file pre-trial motions, including a motion to suppress his statement. [Court File No. 1, Habeas Corpus Petition, pp. 11-20]. The respondent contends he is entitled to judgment as a matter of law based on procedural default with respect to two of Trotter's claims, and judgment as a matter of law based upon the findings of the Tennessee state courts as to the remaining two claims.

III.     Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Trotter cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(C). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim

to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

The court has reviewed the brief Trotter filed on direct appeal from the denial of post-conviction relief. [Addendum 3, Brief of Appellant, pp. 1-10]. Trotter did not raise in that brief the claims that his attorney failed to object to the introduction of inflammatory testimony from witnesses or that his attorney failed to inform him of any plea negotiation offers proffered by the State. Accordingly, Trotter has procedurally defaulted those claims of ineffective assistance of counsel.

The court will, therefore, consider on the merits only Trotter's claims that his attorney failed to contact alibi witnesses and failed to file pre-trial motions. With respect to those claims, the respondent contends he is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

IV.   State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Trotter may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and Trotter must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

7

V.    Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Trotter must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

The two-part test of Strickland also applies to ineffective assistance of counsel claims in cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52 (1985); *Sparks v. Sowders*, 852 F.2d 882 (6th Cir. 1988).

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58-59 (footnote omitted).

In considering Trotter's claims of ineffective assistance of counsel, the Tennessee Court of Criminals first summarized the evidence at the post-conviction hearing, as well as the trial court's conclusion in denying post-conviction relief:

> At the post-conviction hearing, the petitioner's trial counsel testified that he met with the petitioner three times prior to the entry of the guilty pleas. Counsel stated that he was appointed to the petitioner's case after another attorney had been removed. Counsel reviewed the discovery provided to the previous attorney. The discovery materials included crime scene photographs and medical records. However, there was no DNA evidence to connect the petitioner with the crimes. Counsel felt that he had a good understanding of the State's case against the petitioner. Counsel discussed in detail with the petitioner the available defenses, the likelihood of conviction, and the possible punishments the petitioner could receive upon conviction.
>
> Counsel conceded that he did not visit the crime scene. He stated that he had planned to argue for mitigating the petitioner's sentence at the

9

sentencing hearing, but the petitioner entered into an agreement regarding his sentences.

Counsel said that he did not present any character witnesses for the petitioner because the petitioner did not want "a hearing." Additionally, counsel did not ask for a mental evaluation of the petitioner because the petitioner did not seem to need an evaluation. Counsel was aware that the petitioner used drugs, specifically noting that the petitioner used drugs on the night of the offenses.

Counsel asked the petitioner about his statement to police. The petitioner stated that he had been advised of his *Miranda* rights, he understood those rights, and he waived his rights before giving the statement. The petitioner did not indicate that he was under the influence of an intoxicating substance at the time he gave his statement to police. Counsel stated that he could find no basis on which to file a motion to suppress the statement. Counsel said that he did not file any other pretrial motions.

Counsel stated that he knew the victim had been shown a photographic lineup, and counsel had examined the pictures used in the lineup. Counsel acknowledged that the victim identified someone other than the petitioner from the lineup; however, counsel said that other than discussing the issue with the petitioner, he was unsure of how he could have pursued the identification issue further. Counsel conceded that he did not speak with Stephen Patrick Gossey, the person who had been identified by the victim. Counsel stated, "It certainly would have been a defense if [Gossey] did it, but considering [the petitioner] was saying I did it, I didn't see any need to talk to anyone else."

Counsel said that he did legal research in connection with the petitioner's case, including researching the elements of the crimes charged and sentencing. Counsel also said that he would have investigated any witnesses or pursued any leads suggested by the petitioner. However, the petitioner never asked counsel to speak with additional witnesses. Counsel asserted, "If he'd asked me to do something, I usually do it."

Counsel stated that he could not recall if he investigated any witnesses who were not identified by the petitioner, but he was sure that he never spoke with the victim. Counsel did not speak with the petitioner's co-defendants, but he did speak with their attorneys. Counsel stressed that the petitioner never denied his involvement in the crimes; in fact, the petitioner gave a statement

to police detailing his role in the crimes. Counsel maintained that the petitioner never indicated that he wanted to go to trial. Counsel recalled that the petitioner's statement to police was a "big part" of the decision to enter guilty pleas. Counsel asserted that the petitioner "was just looking to get the best deal he could."

Counsel recalled that prior to entry of the petitioner's guilty pleas, the State offered to allow the petitioner to plead guilty to the charged offenses in exchange for a sentence of thirty-five years, one hundred percent of which would be served in confinement. The petitioner rejected that offer and countered with an offer to plead guilty to the offenses if the accompanying sentences required that he serve no more than fifteen years. The State rejected the petitioner's offer and countered with a proposal for an accompanying sentence of twenty-five years, with one hundred percent of the sentence to be served in confinement. The petitioner also rejected that offer and decided to enter open guilty pleas to the offenses and allow the trial court to determine the length of the sentences. However, on the day of the sentencing hearing, the petitioner agreed to a total effective sentence of twenty-five years to be served at one hundred percent. Counsel stated that the petitioner had been aware of the offer of twenty-five years for at least several days prior to accepting the sentence.

Counsel recalled that the district attorney's office sent him a copy of a letter that the petitioner had submitted to the district attorney after the entry of his guilty pleas but prior to the sentencing hearing. In the letter, the petitioner asked if the State would agree to a sentence of twenty-five years, with release eligibility after service of eighty-five percent of the sentence. Counsel stated that he told the petitioner that with a sentence requiring that one hundred percent be served in confinement, the petitioner could potentially earn fifteen percent "good time" credits. Nevertheless, he cautioned the petitioner to assume that a one hundred percent sentence would have to be served completely in confinement because a fifteen percent reduction in sentence was a possibility but was not guaranteed.

The petitioner testified that he spoke with counsel two or three times prior to entering his guilty pleas. He stated that "all [counsel] did was went over the motion discovery." Counsel told the petitioner that the State offered to allow him to plead to a sentence of thirty-five years to be served at one hundred percent. The petitioner asked counsel to try for a lower sentence.

11

Counsel then advised the petitioner that a sentence of twenty-five years at one hundred percent was the shortest sentence the State would accept.

Regarding the photographic lineup, the petitioner said:

> The only thing that was missing was that they had pictures or a photograph that looked like me and that they showed me a photo lineups of me in the photo lineup, but at no point or time did it say that the victim could identify me in any picture of me.

The petitioner stated that there was no physical evidence linking him to the crimes. The petitioner maintained that counsel did not interview the State's witnesses nor did he file any motions. The petitioner said that he was relying on counsel's advice in the case. The petitioner claimed that he did not feel that he had been adequately represented and would like the opportunity to go to trial.

The petitioner testified, "I don't recall telling [counsel] anything about it, but there was an incident when being questioned in the Sumner County Jail by the TBI agents that I was under the influence of drugs." The petitioner alleged that was "the statement that they got on me." The petitioner said that counsel asked him if he was under the influence of an intoxicating substance at the time he gave his statement; however, the petitioner said that he never informed counsel that he was under the influence of drugs or alcohol at the time he gave his statement to police. The petitioner acknowledged that he had been incarcerated for two or three months prior to giving his incriminating statement to police.

The petitioner testified that he had only a limited amount of time to consider the State's offer of twenty-five years because he was "in court when they presented it to me." However, on cross-examination, he admitted that one month before he accepted the offer, he wrote a letter to the district attorney's office requesting a sentence of twenty-five years to be served at eighty-five percent. Thereafter, the petitioner acknowledged that he was not rushed into accepting the sentence.

The petitioner said that trial counsel advised him that the sentencing agreement called for service of one hundred percent of the sentence in confinement. The petitioner acknowledged that counsel never told him that he

would be able to serve only eighty-five percent of the sentence in confinement. The petitioner was not informed that he could potentially earn fifteen percent good time credits. He said, "[A]s for right now and while I was in court, all I can do was 100 percent. That's what I was going to do."

At the conclusion of the post-conviction hearing, the post-conviction court denied the petition for relief. The court found that the petitioner did not meet his burden of establishing the ineffectiveness of counsel by clear and convincing evidence. On appeal, the petitioner contests the post-conviction court's ruling.

*Trotter v. State*, 2006 SL 2843350 at **2-4.

In analyzing Trotter's claims of ineffective assistance of counsel, the Tennessee Court of Criminal Appeals next noted the two-part standard of review set forth in *Strickland*. *Id*. at *5 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

The appellate court then rejected Trotter's arguments:

On appeal, the petitioner alleges that counsel was ineffective because he failed to interview witnesses, investigate the case, follow up on an alternate person being identified from a photographic lineup, pursue the lack of physical evidence against the petitioner, meet with the petitioner more than three times, request a hearing, file pretrial motions, ask the petitioner if he was under the influence at the time of his statement, and advise the petitioner regarding sentencing reductions.

We note that trial counsel testified that he asked the petitioner if he was under the influence of any intoxicating substance at the time of his statement, and the petitioner said that he was not. Additionally, counsel stated that he advised the petitioner that he could potentially earn a fifteen percent reduction in his sentence but such a reduction was not guaranteed. Moreover, while the petitioner complains about counsel's lack of investigation, failure to file motions, failure to meet more frequently with the petitioner, or request a hearing, the petitioner does not state what could have been accomplished had such measures taken place. The petitioner did not testify regarding any witnesses that counsel should have investigated or any proof counsel should have uncovered. Generally, "[w]hen a petitioner contends that trial counsel

13

> failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." We may not speculate on what benefit witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. The petitioner put on absolutely no proof to indicate what prejudice he suffered as a result of any alleged deficiency on the part of counsel. Therefore, the petitioner has failed to establish that he is entitled to relief.

*Id*. (quoting *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App.1990)).

This court has reviewed the transcript of Trotter's post-conviction hearing [Addendum 2, Transcription of Post-Conviction Hearing, pp. 1-46] and finds the decision by the Tennessee Court of Criminal Appeals is supported by the record. Trotter's trial attorney was called as his first witness. [*Id*. at 10]. With respect to Trotter's claim that his attorney failed to contact alibi witnesses, counsel testified that he did not recall investigating any witnesses on behalf of Trotter, but from the first time they met, Trotter never denied committing the offenses but was just looking for the best deal he could get. [*Id*. at 11-12]. On cross-examination, counsel testified that Trotter never asked him to speak to witnesses who were not on the State's witness list nor did Trotter provide counsel with the names of witnesses. [*Id*. at 24]. Trotter also testified at his post-conviction hearing. He admitted that he did not tell counsel of any witnesses he wanted counsel to interview. [*Id*. at 28].

In addition, the record reflects that Trotter's guilty plea was voluntary, knowing, and intelligent, and he was not coerced into pleading guilty. [Addendum 2, Transcription of Post-Conviction Hearing, Exhibit 2, Transcript of Plea Acceptance Hearing, pp. 1-25].

Accordingly, to the extent Trotter claims that he was forced to plead guilty because his attorney failed to contact alibi witnesses, that claim in contradicted in the record.

With respect to Trotter's claim that his attorney failed to file pretrial motions, counsel testified that at the time he came to represent Trotter, prior counsel had pursued discovery, which current counsel was able to review in the file. [Addendum 2, Transcription of Post-Conviction Hearing, pp. 14, 23]. Counsel also testified that he discussed Trotter's statement with him and Trotter admitted that he had been read his rights and fully understood and waived them; Trotter never indicated that he was on drugs at the time he gave his statement. [*Id*. at 13-14, 22-23]. Counsel did not file a motion to suppress Trotter's statement because he could find no grounds to support the motion. [*Id*. at 13-14, 23]. Trotter admitted that he did not tell his trial attorney that he was under the influence of drugs or alcohol at the time he gave his statement to the police. [*Id*. at 28-29, 32].

In denying post-conviction relief, the trial court specifically found there was nothing in the record to suggest that a motion to suppress would have been successful and that counsel investigated everything that would have been useful to investigate. [*Id*. at 52]. In its written Memorandum Opinion in support of the Order denying post-conviction relief, the trial court noted that Trotter was unable to name a single witness that he told counsel to interview. [Addendum 1, Technical Record, pp. 26-32, Memorandum Opinion at 30]. The trial court again found there was no basis for filing a motion to suppress because Trotter received and waived his *Miranda* rights, there was no evidence of coercion, and no evidence

that Trotter was suffering from mental illness or under the influence at the time he made his confession. [*Id*. at 31].

The findings of the state courts are supported in the record and are neither contrary to, nor do they involve an unreasonable application of, federal law as established in *Strickland v. Washington*. Trotter has failed to demonstrate he received ineffective assistance of counsel under the *Strickland* standard and he is not entitled to relief on this claim.

VI. Conclusion

The petition for habeas corpus relief will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**. Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts. Trotter having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(C); Rule 22(b) of the Federal Rules of Appellate Procedure. The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The court will further **DENY** Trotter leave to proceed *in forma pauperis* on appeal.

    **AN APPROPRIATE ORDER WILL ENTER.**

                                              */s/Harry S. Mattice, Jr.*
                                              HARRY S. MATTICE, JR.
                                              UNITED STATES DISTRICT JUDGE